

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| JUDITH L. GLOE, <br><br> Plaintiff, <br><br> vs. <br><br> TEREX CORPORATION, <br><br> Defendant. | 1:22-CV-01004-CBK <br><br> MEMORANDUM OPINION AND ORDER |

Ms. Judith Gloe brings this action against Terex South Dakota, Inc, named in the complaint as Terex Corporation, alleging discrimination and retaliation under several federal and state statutes. The matter is before the Court on Terex's motion for summary judgment. For the following reasons, the motion should be granted.

**I.     Background**

Ms. Gloe worked for Terex assembling hydraulic hose kits for various pieces of heavy equipment in its Watertown, South Dakota, manufacturing facility. On October 15, 2018, a large metal wheel that was welded to a piece of machinery used to make the hose kits broke off its mount. The heavy metal wheel pinned Ms. Gloe against a wall with several metal hooks on it that jabbed into her back while the wheel was on her chest and shoulders. Ms. Gloe did not seek medical attention that day, but the following day she could not move or get out of bed and took the rest of the week off work. She tried to return to the work the following week, but after working a few hours she called a doctor and went to the doctor's office the next day. She returned to work the next day with certain restrictions that Terex accommodated by having Ms. Gloe train another person to assemble the hose kits. Based on the recommendations of a medical provider, Ms. Gloe was off work for approximately two and a half weeks before returning to work on November 19 with additional restrictions including a limit of two hours of work per day. Terex accommodated those restrictions by moving Ms. Gloe to the production floor

where she did timing work measuring the speed of other workers' tasks. On January 14, 2019, Ms. Gloe's medical providers modified her restrictions to allow her to work for five hours per day and Terex moved Ms. Gloe to the assembly line. Ms. Gloe's medical providers eventually allowed her to work for six hours per day increasing to eight hours per day. At some point, Ms. Gloe complained to Terex's human resources department that her supervisor, Mr. Blaine Gulbraa, was forcing her to do certain tasks on the assembly line that violated her work restrictions. In June, Ms. Gloe met with several human resources employees along with Mr. Gulbraa and a production manager to discuss her concerns. She saw a medical provider the next day who slightly modified her work restrictions. Following the meeting with human resources and the modification to her work restrictions, Terex assigned Ms. Gloe to office work. That September, one of Ms. Gloe's medical providers again modified her work restrictions at which point Terex moved her to the materials supply building. Ms. Gloe had a functional capacity evaluation in October that concluded she could perform light work. Terex kept Ms. Gloe in the materials supply building until she was terminated on November 19, 2019.

Terex enforced its attendance policy with a system of processive discipline by issuing "occurrence" points for unplanned absences. After receiving four occurrences, Terex issued an employee a corrective action. After five occurrences, it issued a second corrective action. After six occurrences, it issued a third and final corrective action, and after seven occurrences, Terex terminated the employee. Occurrences were counted on a 12-month rolling basis, so after a year passed, an occurrence was no longer counted. Throughout her tenure at Terex, Ms. Gloe received a series of occurrence points due to absence. She received a third and final corrective action on July 11, 2019, August 5, 2019, September 30, 2019, October 14, 2019, and November 4, 2019, before being terminated on November 18, 2019.

## II.    Standard of Review

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56;

Bedford v. Doe, 880 F.3d 993, 996 (8th Cir. 2018). The United States Supreme Court has held that:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (internal quotations omitted).

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). That is, to make summary judgment inappropriate, there must be a factual dispute concerning facts the existence or nonexistence of which "must be outcome determinative under prevailing law." Walls v. Petrohawk Props., LP, 812 F.3d 621, 625 (8th Cir. 2015) (quoting Grey v. City of Oak Grove, 396 F.3d 1031, 1034 (8th Cir. 2005)).

Thus, in accordance with Rule 56(c), the party seeking summary judgment must first identify grounds demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Upon such a showing, the burden shifts to the non-movant to present affirmative evidence, beyond the pleadings, showing that a genuine issue of material fact exists. Anderson, 477 U.S. at 256–57. To meet its burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the nonmovant must be able to "show there is sufficient evidence to support a jury verdict in their favor." Nat'l Bank of Com. v. Dow Chem. Co., 165 F.3d 602, 607 (8th Cir. 1999). After this exercise, "we view the facts and the inferences to be drawn from them in the light most favorable to the nonmoving party." Northport Health Servs. of Ark., LLC v. Posey, 930 F.3d 1027, 1030 (8th Cir. 2019). "To show a genuine

3

dispute of material fact, a party must provide more than conjecture and speculation." Zayed v. Associated Bank, N.A., 913 F.3d 709, 720 (8th Cir. 2019).

**III. Analysis**

Ms. Gloe's federal claims are based on the Americans with Disabilities Act and the Rehabilitation Act. She also asserts similar claims arising under South Dakota state law. Ms. Gloe alleges discrimination on the basis of a disability, failure to accommodate, and retaliation. Cases interpreting the Americans with Disabilities Act or the Rehabilitation Act are "interchangeable," so the Court need not delineate between which claims are raised under either Act. See Dick v. Dickinson State Univ., 826 F.3d 1054, 1059 n.4 (8th Cir. 2016) (citing Buboltz v. Residential Advantages, Inc., 523 F.3d 864, 868 (8th Cir. 2008)).

A. Disability Discrimination and Failure to Accommodate

The Americans with Disabilities Act makes it unlawful for a covered employer to discriminate against any "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The Eighth Circuit has "long recognized" that a party may prove intentional discrimination under the Americans with Disabilities Act using either direct or indirect evidence. Lipp v. Cargill Meat. Sols. Corp., 911 F.3d 537, 543 (8th Cir. 2018) (quoting Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004)). Ms. Gloe does not appear to rely on the direct-evidence approach and the Court is not aware of any direct evidence of discrimination. Therefore, the familiar McDonnell Douglas burden-shifting framework applies.

Under the McDonnell Douglas framework, an employee must first establish a prima facie case of discrimination by showing that she "(1) is disabled within the meaning of the [Americans with Disabilities Act], (2) is a qualified individual under the [Americans with Disabilities Act], and (3) has suffered an adverse employment action because of [her] disability." EEOC v. Prod. Fabricators, Inc., 763 F.3d 963, 969 (8th Cir. 2014) (quoting Hill v. Walker, 737 F.3d 1209, 1216 (8th Cir. 2013)); see also Young v. Warner-Jenkinson Co., 152 F.3d 1018, 1021–22 (8th Cir. 1998). Once the plaintiff establishes this prima facie case, a rebuttable presumption of discrimination arises and

4

the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action. Id. (citing Young, 152 F.3d at 1021). If the employer provides a reason, the burden shifts back to the plaintiff to show that the employer's proffered legitimate nondiscriminatory reason is merely a pretext for intentional discrimination. Id.

Discrimination also includes failing to make reasonable accommodations to an employee with a known physical limitation. See Hustvet v. Allina Health Sys., 910 F.3d 399, 409–10 (8th Cir. 2018); 42 U.S.C. § 12112(b)(5)(A). To support a failure to accommodate claim, a plaintiff "must establish both a prima facie case of discrimination based on her disability and a failure to accommodate it." Kelleher v. Wal-Mart Stores, Inc., 817 F.3d 624, 631 (8th Cir. 2016) (quoting Schaffhauser v. United Parcel Serv., Inc., 794 F.3d 899, 905 (8th Cir. 2015)). "In a reasonable accommodation case, the 'discrimination' is 'framed in terms of the failure to fulfill an affirmative duty—the failure to reasonably accommodate the disabled individual's limitations,' as required by the [Americans with Disabilities Act]." Prod. Fabricators, Inc., 763 F.3d at 971 (quoting Peebles v. Potter, 354 F.3d 761, 767 (8th Cir. 2004)). To determine whether an accommodation is necessary and what that accommodation may be, the employer and employee must engage in the "interactive process." Id. (quoting Peyton v. Fred's Stores of Ark., Inc., 561 F.3d 900, 903 (8th Cir. 2009)).

Ms. Gloe cannot show that she was a qualified individual for purposes of her disability discrimination and failure to accommodate claims. To receive protection as a qualified individual, "an employee must (1) possess the requisite skill, education, experience, and training for his position, and (2) be able to perform the essential job functions, with or without reasonable accommodation." Ehlers v. Univ. of Minn., 34 F.4th 655, 659 (8th Cir. 2022) (quoting Fenney v. Dakota, Minn. & E. R.R. Co., 327 F.3d 707, 712 (8th Cir. 2003)); see also 42 U.S.C. § 12111(8). The Eighth Circuit has "consistently stated that 'regular and reliable attendance is a necessary element of most jobs.'" Lipp, 911 F.3d at 544 (quoting Greer v. Emerson Elec. Co., 185 F.3d 917, 921

(8th Cir. 1999)). Also, "consideration shall be given to the employer's judgment as to what functions of a job are essential." Id. (quoting 42 U.S.C. § 12111(8)).

Terex's policies clearly indicate that regular attendance was essential to Ms. Gloe's job. Terex's employee handbook states, "Reliable and punctual attendance is a critical factor in maintaining a productive work environment" and, "Unplanned absenteeism, late arrivals, and leaving early place a burden on other team members, the Company, and impact our ability to meet customer expectations." Terex enforced its policy with a system of processive discipline by issuing "occurrence" points for unplanned absences. Additionally, all the job activities Ms. Gloe described during her deposition, including work in the hose department, light work in the materials supply building, and office work, required being present at Terex's premises.

Ms. Gloe appears to argue, perplexingly, that attendance at her job was not essential and suggests that she could miss work for nonexcused reasons because she had medical appointments and work restrictions due to her injury. However, part of Terex's attendance policy excused absences relating to a worker's compensation injury. Although Ms. Gloe objects to Terex's statement that she missed 48 full days and a total of 1,299 hours of work, she does not seem to contest that Terex accommodated her medical appointments, and Mr. Gulbraa testified that Ms. Gloe's absences due to severe migraines or medical appointments were not recorded as occurrences.

Ms. Gloe takes issue with Terex's attendance policy generally and how it was applied to her. She argues that several occurrences were improperly recorded and that as a result she should not have received certain corrective actions. Even if that were true as it relates to certain absences around the time of her injury, the termination notice had seven listed occurrences during 2019, which was several months after her workplace injury, and did not contain any occurrences recorded from October 2018 when she was

6

injured.[1] She also claims more broadly that none of the occurrences that were recorded as "CIS," or called in sick, should have counted because she only called in sick due to illness associated with her workplace injury. According to Ms. Gloe, there is "no evidence that the call-ins were in violation of [Terex's] policy." But Ms. Gloe never wrote any comment on any of the corrective actions stating that any of the occurrences were improperly given and she never took any steps to notify Terex's human resources department that the occurrences were given in error.[2] The corrective actions themselves are evidence that the absences were in violation of Terex's attendance policy. Under Ms. Gloe's view of the Americans with Disabilities Act, an employer must keep a disabled employee employed, even if they are unable to work, when the injury happened at the employer's premises.[3] There is no supporting law for such an interpretation.

Based on the undisputed facts viewed in the light most favorable to the plaintiff, it is clear that Ms. Gloe was not a qualified individual because she could not regularly attend work. Her own deposition testimony overwhelmingly supports that inference. Accordingly, the Court need not address the next steps in the McDonnell Douglas framework or whether Terex engaged in the interactive process of accommodating Ms. Gloe's disability.[4] Terex's motion for summary judgment with respect to these two claims should be granted.

---

[1] Ms. Gloe claims that certain other absences should not have been counted multiple times because they were consecutive missed days of work. But the termination notice clearly shows that those absences were only counted as one occurrence.

[2] The October 14, 2019, corrective action shows that Terex did correct Ms. Gloe's record of occurrences when given in error. That corrective action removed an occurrence point for an August 5, 2019, absence because it should have been classified as a worker's compensation absence, and that occurence was not counted on the termination notice.

[3] Ms. Gloe also contends that with continued medical care provided by Terex's medical benefits, she could have resumed her job in the hose department. But the Americans with Disabilities Act is not a federal form of worker's compensation.

[4] Even if Ms. Gloe could establish a prima facie case of discrimination, Terex's motion for summary judgment would still be granted on these two claims. Terex offers a nondiscriminatory reason for Ms. Gloe's termination and Ms. Gloe cannot show pretext within the McDonnell Douglas framework based on Terex treating other similarly

B. Retaliation Claim

The Americans with Disabilities Act also prohibits retaliation. See 42 U.S.C. § 12203(a). Unlike a claim for disability discrimination or failure to accommodate a disability, a retaliation claim under the Americans with Disabilities Act does not require the plaintiff to show that she is a qualified individual. See Kirkeberg v. Can. Pac. Ry., 619 F.3d 898, 907 (8th Cir. 2010) (quoting Heisler v. Metro. Council, 339 F.3d 622, 632 (8th Cir. 2003)); see also EEOC v. N. Mem'l Health Care, 908 F.3d 1098, 1102–03 (8th Cir. 2018) ("If an employer denies a good faith request for a disability accommodation because the employee does not have a qualifying disability *and* fires the employee for making the request, at a minimum the employee has an ADA retaliation claim under 42 U.S.C. § 12203(b) for interfering with the exercise of the employee's ADA rights. That was the factual basis for the retaliation claims in Kirkeberg and Heisler."). Similar to her claims for disability discrimination and failure to accommodate, Ms. Gloe appears to rely on the McDonnell Douglas framework to create an inference of retaliation rather than

---

situated employees differently or failing to follow its own policies. See Prod. Fabricators, 763 F.3d at 970. Similarly, the evidence produced in discovery overwhelmingly shows that Terex went to great lengths throughout the interactive process to accommodate Ms. Gloe's disability.

Ms. Gloe focuses her legal argument on Terex's decision to not allow her to return to her previous position in the hose department that she enjoyed and in which she did well. Specifically, Ms. Gloe says she "was not allowed to return to her hose department job, which she could do, and was eventually moved to the frigid [materials supply] building, from office duty, for no reason." But this statement flies in the face of undisputed documentation produced by both parties in discovery. In her functional capacity evaluation, Ms. Gloe's own medical providers stated that her physical limitations presented a barrier to returning to her previous job in assembly, precluding a return to the hose department where medium to heavy physical exertion was required. Terex moved Ms. Gloe to the materials supply building after her evaluation allowed her to resume light work. Terex was not legally required to modify the hose department job to suit her needs. It ostensibly had an opening in the materials supply building that satisfied Ms. Gloe's restrictions and placed her there to suit its own staffing requirements. Although this case undoubtedly involves an unfortunate series of events, Ms. Gloe cannot claim a violation of federal employment law because Terex would not allow her to return to a job that her own medical providers said she could not do.

8

direct evidence. See Prod. Fabricators, 763 F.3d at 972 ("In order to succeed on this retaliation claim, there must either be direct evidence of retaliation or an inference of retaliation must be created under the McDonnell Douglas burden-shifting framework."). "In the absence of direct evidence, to establish such a retaliation claim under the [Americans with Disabilities Act], a "plaintiff must show that (1) [she] engaged in a statutorily protected activity, (2) the employer took an adverse action against [her], and (3) there was a causal connection between the adverse action and the protected activity." Id. (quoting Hill, 737 F.3d at 1218). "An [Americans with Disabilities Act] retaliation claim 'requires a but-for causal connection between the employee's assertion of her [Americans with Disabilities Act] rights and an adverse action by the employer.'" Evans v. Cooperative Response Center, Inc., 996 F.3d 539 (8th Cir. 2021) (quoting Moses v. Dassault Falcon Jet–Wilmington Corp., 894 F.3d 911 (8th Cir. 2018))

  Here, Ms. Gloe cannot show but-for causation. The parties do not seem to dispute that Ms. Gloe engaged in a statutorily protected activity by requiring accommodations due to her workplace injury or that Terex terminated Ms. Gloe's employment. But Ms. Gloe has not put forth evidence to show causation. She cannot rely on temporal proximity because she was terminated approximately one year after she began to require accommodations. See Kelleher, 817 F.3d at 633–24 ("Temporal proximity alone is insufficient to show that an employer's proffered reason for action was a pretext for discrimination."). Even if the Court considered the date of the last time Ms. Gloe's medical restrictions were altered and Terex moved her to a different department, it is still insufficient to show but-for causation. Terex could legitimately terminate Ms. Gloe if she was unable to perform the essential functions of her job, including not following the attendance policy. See Moses, 894 F.3d at 924. As already discussed, undisputed evidence including Ms. Gloe's own testimony shows that she was unable to regularly and reliably attend her job. She cannot now claim that she was retaliated against on that basis.

  Ms. Gloe seems to make several other legal arguments to support a retaliation claim. She argues that Mr. Gulbraa retaliated against her by violating her work

restrictions and that Terex retaliated against her by assigning her to the materials supply building that she claims was too cold. It is undisputed that Ms. Gloe reported Mr. Gulbraa to Terex's human resources department for violating her work restrictions. But Terex's response to her complaint dispels any inference of retaliation. After Ms. Gloe complained about Mr. Gulbraa, Terex had a meeting to discuss her concerns related to her current position and work restrictions. Terex considered her work restrictions and ensured Ms. Gloe that it would follow them, and after the meeting, she was moved to a different area. It seems that Ms. Gloe wanted to return to assembling hose kits, but as already stated, her own doctors did not permit her to do so. Ms. Gloe also claims that moving her to the materials supply building constitutes retaliation because the doors of the building were often open and it was too cold. In response, Terex claims that the hose department building was often colder than the materials supply building. But simply placing Ms. Gloe in the materials supply building is not an adverse employment action. See Kelleher, 817 F.3d at 633 ("An adverse employment action in the retaliation context is similar to an adverse action under the discrimination standard, and '[t]ermination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard, but minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not.'" (quoting Spears v. Mo. Dep't of Corr. & Human Res., 210 F.3d 850, 853 (8th Cir. 2000))). Terex did not reduce Ms. Gloe's pay or benefits and the move did not affect her future career prospects. Placing her in the materials supply building was a minor change in working conditions and took place to accommodate Ms. Gloe's own medical needs. Although Ms. Gloe claims that she did not like the cold, she had no medical restriction regarding temperature. Accordingly, Ms. Gloe's retaliation claim fails and Terex's motion for summary judgment with respect to this claim should be granted.

    C. Remaining State Law Claims

    Ms. Gloe also raises claims under South Dakota state law pursuant to SDCL § 20-13-10 and § 60-11-17.1. The Court declines to exercise supplemental jurisdiction over

10

these claims because there are no remaining federal claims over which the Court has original jurisdiction. See Wilson v. Miller, 821 F.3d 963, 970 (8th Cir. 2016) ("A federal district court has discretionary power to decline the exercise of supplemental jurisdiction where the court has 'dismissed all claims over which it has original jurisdiction.'" (quoting 28 U.S.C. § 1367(c)(3)). Therefore, Ms. Gloe's state law claims should be dismissed.

**IV.  Conclusion**

Now, therefore, it is ordered:

1. Terex's motion for summary judgment, Doc. 17, with respect to Ms. Gloe's intentional discrimination claim should be granted.
2. Terex's motion for summary judgment, Doc. 17, with respect to Ms. Gloe's failure to accommodate claim should be granted.
3. Terex's motion for summary judgment, Doc. 17, with respect to Ms. Gloe's retaliation claim should be granted.
4. Ms. Gloe's two state law claims are dismissed without prejudice for the lack of jurisdiction.

DATED this 25th day of July, 2023.

BY THE COURT:

*[signature]*
CHARLES B. KORNMANN
United States District Judge